UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL HAYNES,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>HOME DEPOT U.S.A., INC.,<br><br>　　　　　　　　　　　Defendant. | Case No.: 15-CV-1038-CAB-JLB<br><br>**ORDER RE DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT AS TO PUNITIVE DAMAGES** |

This matter is before the Court on Defendant's renewed motion for summary judgment as to punitive damages. The motion is fully briefed, and the Court deems it suitable for submission without oral argument. For the reasons set forth below, the motion is granted.

### I.　BACKGROUND

Plaintiff Carl Haynes ("Plaintiff") worked as an Assistant Store Manager ("ASM") for Defendant Home Depot U.S.A., Inc. ("Defendant" or "Home Depot") from 1987 until his termination in 2013. [Doc. No. 33-6 at p. 4.] The underlying facts of Plaintiff's employment experience with Home Depot are described in the Court's order on Home Depot's first motion for summary judgment, dated May 6, 2016. [Doc. No. 45.]

On February 13, 2015, Plaintiff filed a complaint against Home Depot in state court. Home Depot removed the matter to this Court on May 8, 2015, based on diversity

jurisdiction. Shortly thereafter, Plaintiff filed a first amended complaint (the "FAC"), which is the operative complaint in this matter, asserting twelve claims against Home Depot arising out of Plaintiff's employment with and termination by Home Depot. [Doc. No. 5.] On May 6, 2016, the Court granted Home Depot's motion for summary judgment ("MSJ") as to all twelve of Plaintiff's causes of action alleged in the FAC. [Doc. No. 45.] On June 22, 2016, Plaintiff filed an Amended Notice of Appeal regarding the Court's orders granting summary judgment and sanctioning Plaintiff's attorneys. [Doc. No. 68.] On January 22, 2020, the Ninth Circuit Court of Appeals affirmed in part and reversed in part the Court's orders and remanded for further proceedings. [Doc. No. 81.] The four causes of action remaining before this Court from Plaintiff's FAC are: (1) Plaintiff's fifth cause of action claiming wages under the California labor code; (2) Plaintiff's sixth cause of action for wrongful termination; (3) Plaintiff's ninth cause of action for age discrimination; and (4) Plaintiff's tenth cause of action for wrongful termination in violation of public policy. [Doc. No. 5.]

Defendant now brings this renewed motion for summary judgment on Plaintiff's claim for punitive damages, arising out of his claims of wrongful termination (sixth cause of action), age discrimination (ninth cause of action), and wrongful termination in violation of public policy (tenth cause of action) as alleged in the FAC. [*Id.*] Defendant's motion is now fully briefed and ripe for resolution.

## II.   LEGAL STANDARD

### A. Summary Judgment

Federal Rule of Civil Procedure 56(c)(1)(A) provides that "a party may move for summary judgment at any time until 30 days after the close of discovery." "A party opposing the motion must file a response within 21 days after the motion is served or a responsive pleading is due, whichever is later." FED. R. CIV. P. 56(c)(1)(B).

A party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment

as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To avoid summary judgment, disputes must be both 1) material, meaning concerning facts that are relevant and necessary and that might affect the outcome of the action under governing law, and 2) genuine, meaning the evidence must be such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223, 1229 (9th Cir. 2000).

The moving party bears the initial burden of establishing the basis for its motion by "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *See Celotex Corp.*, 477 U.S. at 323 (internal quotations omitted). If the moving party can demonstrate that its opponent has not made a sufficient showing on an essential element of his case, the burden shifts to the opposing party to set forth facts showing that a genuine issue of disputed fact remains. *Id.* at 324. When ruling on a summary judgment motion, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, "[t]he district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could conveniently be found." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1031 (9th Cir. 2001).

### III. ANALYSIS

Home Depot moves for summary judgment on Plaintiff's request for punitive damages. Because all of Plaintiff's remaining causes of action are based on state statutes and/or doctrines, the availability of punitive damages here is a question of state law. *Cent. Off. Tel. v. AT&T Co.*, 108 F.3d 981, 993 (9th Cir. 1997), *rev'd on other grounds*, 524 U.S. 214, 228 (1998). In California, a plaintiff may recover punitive damages in addition to actual damages from a defendant when the plaintiff proves by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice. CAL. CIV.

CODE § 3294(a).  When a plaintiff sues an employer for punitive damages based on the tortious acts of an employee, the employer may be statutorily liable in three situations: "(1) when an employee was guilty of oppression, fraud or malice, and the employer with advance knowledge of the unfitness of the employee employed him or her with a conscious disregard of the rights or safety of others, (2) when an employee was guilty of oppression, fraud or malice, and the employer authorized or ratified the wrongful conduct, or (3) when the employer was itself guilty of the oppression, fraud or malice."  *Weeks v. Baker & McKenzie*, 74 Cal. Rptr. 2d 510, 524 (1998).  In the case of a corporate employer, "the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation."  CAL. CIV. CODE § 3294(b).  By confining an employer's liability to the acts of its corporate leaders, or "the group whose intentions guide corporate conduct," California law "avoids punishing the corporation for malice of low-level employees which does not reflect the corporate 'state of mind' or the intentions of the corporate leaders." *Cruz v. HomeBase*, 99 Cal. Rptr. 2d 435, 439 (2000).

Home Depot, a corporate employer, is the sole defendant named in this case. Plaintiff alleges that he was wrongfully terminated and discriminated against by two Home Depot employees: store manager Chris Collins ("Collins") and district manager Jeff Grooms ("Grooms").  [Doc. No. 5 at pp. 29-30, 34-37.]  Collins and Grooms are the only Home Depot employees alleged by Plaintiff to have committed any wrongdoing. Accordingly, in order to recover punitive damages from Home Depot for the allegedly tortious acts of its employees under section 3294(b), Plaintiff must show by clear and convincing evidence that either Collins or Grooms was an "officer, director, or managing agent" of Home Depot.

Collins was the store manager for Home Depot Store Number 673 in Santee ("the Santee store"), and was Plaintiff's direct supervisor, from approximately June 2010 through Plaintiff's termination in February 2013.  [Doc. No. 91-4 ¶ 3.]  Grooms was the district manager of District 199 in Home Depot's Pacific South Region, which includes the

Santee store, from approximately March 2011 through Plaintiff's termination. [Doc. No. 91-3 ¶ 2.] Home Depot states that it is undisputed that Collins and Grooms are neither officers nor directors of Home Depot. [Doc. No. 91-1 at p. 17.] Despite Plaintiff's conclusory statement that this is a misrepresentation [Doc. No. 93 at p. 7], Plaintiff does not actually claim that either Collins or Grooms are officers or directors of Home Depot. Instead, Plaintiff argues that Collins and Grooms were "managing agents," and thus Home Depot should be held liable for their wrongdoing. [*Id.* at p. 12.] In sum, the pleadings filed by both parties indicate that neither Collins nor Grooms was an officer or director of the defendant corporation, and Plaintiff has not shown any genuine dispute of fact as to whether they were officers or directors. Accordingly, the Court focuses its analysis on whether a genuine dispute of fact exists as to Collins and Grooms' status as "managing agents" of Home Depot.

### A. Neither Collins nor Grooms Were Managing Agents of Home Depot

The Supreme Court of California defines managing agents as corporate employees who "exercise substantial independent authority and judgment in their corporate decisionmaking so that their decisions ultimately determine corporate policy." *White v. Ultramar, Inc.*, 21 Cal. 4th 563, 566-67 (1999). Thus, under section 3294(b), a plaintiff seeking punitive damages "would have to show that the employee exercised substantial discretionary authority over significant aspects of a corporation's business." *Id.* at 577. A determination of whether employees are managing agents "does not necessarily hinge on their 'level' in the corporate hierarchy . . . rather, the critical inquiry is the degree of discretion the employees possess in making decisions that will ultimately determine corporate policy." *Pulte Home Corp. v. Am. Safety Indem. Co.*, 223 Cal. Rptr. 3d 47, 79 (2017) (quoting *Kelly-Zurian v. Wohl Shoe Co.*, 27 Cal. Rptr. 2d 457, 470 (1994)). In this context, "corporate policy" refers to "formal policies that affect a substantial portion of the company and that are the type likely to come to the attention of corporate leadership." *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 714 (2009); *see also Cruz*, 99 Cal. Rptr. 2d at 440 (explaining that "'corporate policy' is the general principles which guide a corporation,

or rules intended to be followed consistently over time in corporate operations," and thus a managing agent "is one with substantial authority over decisions that set these general principles and rules"). "It is this sort of broad authority that justifies punishing an entire company for an otherwise isolated act of oppression, fraud, or malice." *Roby*, 47 Cal. 4th at 714.

As the moving party, Home Depot has the initial burden of establishing the nonexistence of any triable issue of material fact. *Davis v. Kiewit Pac. Co.*, 162 Cal. Rptr. 3d 805, 813-14 (2013). Along with its motion for summary judgment, Home Depot provided declarations from both Collins and Grooms describing their positions, employment history and job duties at Home Depot, and attached the job description for each of their respective positions. [Doc. No. 91-4 at pp. 8-10; Doc. No. 91-3 at pp. 7-9.] In response, Plaintiff attached various excerpts from Grooms' deposition testimony taken in two other cases brought by Plaintiff's attorneys against Home Depot. [Doc. No. 93-1 at pp. 52-92.] Plaintiff did not attach any deposition testimony from Collins, but instead referred to the same store manager job description attached by Defendant as evidence of Collins' "managing agent" status. [Doc. No. 93 at p. 21.] Nevertheless, drawing all inferences in the light most favorable to Plaintiff, Plaintiff has not set forth facts showing that a genuine dispute of material fact exists as to whether Collins or Grooms was a managing agent of Home Depot.

As store manager, Collins was responsible for the complete day to day operation of the Santee store. [Doc. No. 91-4 at p. 9.] Collins' responsibilities included maximizing store sales and profitability, developing store strategies and objectives, leading a team of associates in executing those strategies and objectives, ensuring adequate stock levels, providing excellent customer service, and overseeing personnel issues. [*Id.*] Plaintiff argues that as a store manager, Collins oversaw 200 to 250 employees and had discretion in setting policies within the store (including staffing and overtime policies), and therefore was a managing agent. [Doc. No. 93 at p. 21.] However, even assuming Collins had freewheeling discretion over the Santee store's policies and practices, the Santee store was

just one out of over 2,000 Home Depot store locations in North America at the time of Plaintiff's termination. [Doc. No. 91-1 at p. 20.] Plaintiff has not demonstrated that the actions taken or decisions made by Collins at the Santee store had any effect on a "substantial portion of the company," or that the policies created by Collins were of "the type likely to come to the attention of corporate leadership." *Roby*, 47 Cal. 4th at 714. As a multinational corporation with thousands of stores, Home Depot's business could not operate without store managers exercising some level of discretion over their stores and employees. However, that does not mean individual store managers influence Home Depot policy at a company-wide level. Plaintiff also argues that Collins had discretion over staffing (i.e., hiring and firing), thereby making him a managing agent. A manager's ability to hire or fire other employees alone does not equate to "managing agent" status as required by section 3294(b). *See White*, 21 Cal. 4th at 575 ("A rule defining managing agent as any supervisor who can hire or fire employees, but who does not have substantial authority over decisions that ultimately determine corporate policy, effectively allows punitive damage liability without proof of anything more than simple tort liability, which we have long recognized is insufficient."). In sum, none of Collins' discretionary responsibilities pointed to by Plaintiff show that Collins had independent authority over Home Depot's corporate policy which would justify punishing the entire corporation for his alleged wrongdoing.

Plaintiff has similarly failed to present a dispute of material fact as to whether Grooms was a managing agent of Home Depot. From 2011 through Plaintiff's termination, Grooms worked as the district manager of District 199, which required him to oversee the operations of eleven Home Depot stores throughout the Pacific South Region. [Doc. No. 91-3 at p. 2.] As district manager, Grooms' responsibilities included "ensur[ing] that company standards are uniformly met and adhered to across all stores within [the] assigned district," providing guidance and feedback to store managers based on sales reports and profitability, overseeing resource and inventory balancing across stores, and supervising staffing decisions. [*Id.* at p. 8.] Grooms' position required him to work "in the field"

surveying stores in his district and assisting store managers with training and development. [*Id.* at p. 3.] By including and bolding portions of Grooms' deposition testimony (taken in two different cases against Home Depot) in his responsive papers, Plaintiff presumably argues that Grooms' job duties qualify him as a managing agent. The deposition excerpts included by Plaintiff refer to Grooms' various responsibilities as a district manager in which he exercises some discretion, including personnel management, hiring and firing, profit and loss management, and overall store operations. [Doc. No. 93 at pp. 17-21.] This testimony is not clear and convincing evidence that Grooms was a managing agent of Home Depot. As discussed above, exercising some discretion does not equate to managing agent status without additional proof that the employee's discretion affected widespread corporate policy. Plaintiff does not include any additional evidence to show that Grooms exercised such discretion.

Plaintiff also appears to argue that because Grooms managed multiple Home Depot stores and had broad authority over their operations, he was a managing agent. However, the fact that an employee supervises many employees or store locations does not necessarily establish that status. *See Muniz v. United Parcel Serv., Inc.*, 731 F. Supp. 2d 961, 976 (N.D. Cal. 2010) (finding no triable issue of whether operations manager was a managing agent, although he was "in charge of 6 divisions, 23 package centers and approximately 40 managers, 150 supervisors and 4,200 employees," without additional evidence that he set corporate policy); *Almaweri v. Walgreen Specialty Pharmacy, LLC*, No. 13-cv-04920-EDL, 2015 WL 349158, at *10-11 (N.D. Cal. Jan. 26, 2015) (finding no triable issue of whether district manager was a managing agent, though he supervised thirty-three stores in his district and 0.41% of stores nationwide, without evidence that he was responsible for a significant aspect of the defendant's business or made significant decisions affecting company policy); *Razo v. TIMEC Co., Inc.*, No. 15-cv-03414-MEJ, 2017 WL 5079249, at *16-17 (N.D. Cal. Nov. 3, 2017) (finding no triable issue of whether a site manager, who oversaw personnel, site profitability and client interactions, was a managing agent because he had no role in setting company-wide policies or decision-

making authority in creating company policy). Solely relying on the number of stores and employees managed by Grooms is not enough to show that he had discretionary authority over Home Depot's corporate policy. Unlike in *White* where the court found a zone manager to be a managing agent because the eight stores and sixty-five employees she managed were a "significant aspect of [the defendant's] business," the eleven Home Depot stores managed by Grooms constitute approximately one half of one percent of Home Depot's store locations. *See White*, 21 Cal. 4th at 577-78; *see also Cortez v. Chipotle Mexican Grill, Inc.*, No. CV 17-4787-GW(JPRx), 2018 WL 6071093, at *16 (C.D. Cal. Aug. 9, 2018) ("Managing less than one percent of Defendants' restaurants and supervising less than one percent of Defendants' employees does not evidence 'substantial discretionary authority over significant aspects of a corporation's business.'" (quoting *White*, 21 Cal. 4th at 577)). For a large multinational corporation like Home Depot, less than one percent of its stores can hardly be said to constitute a significant aspect of its business. Thus, any evidence of discretion exercised by Grooms that affected operations in the eleven stores he managed—including personnel matters, profitability metrics and other store performance assessments—is not evidence that his decisions impacted corporate policy throughout a "substantial portion" of Home Depot. *Roby*, 47 Cal. 4th at 686.

The district manager job description attached by Home Depot further supports its contention that Grooms did not create corporate policy. District managers are expected to "ensure that company standards are uniformly met and adhered to across all stores within assigned district"—not subjectively set those standards themselves. [Doc. No. 91-3 at p. 8.] Similarly, in one of the deposition transcripts lodged by Plaintiff, Grooms testified that when going through the "discipline process" with an employee, district managers have "a policy that we follow, standard operating procedures, and a code of conduct policy that are guidelines, and there are normals in there." [Doc. No. 93-1 at p. 90.] Though district managers may consider "extenuating circumstances" of the individual employee, they still must abide by Home Depot's corporate policy. [*Id.*] Plaintiff has failed to establish that

Grooms had any discretionary authority over the creation of those policies, or that any decisions made by Grooms affected a substantial portion of Home Depot's business beyond the eleven retail locations he managed.

Finally, Plaintiff argues that even if Collins and Grooms are not managing agents, some unidentified officer, director or managing agent of Home Depot knew of Collins and Grooms' allegedly tortious conduct through Home Depot's Management Incentive Program ("MIP"). [Doc. No. 93 at p. 24.] Plaintiff claims that Grooms intentionally terminated him before his retirement in order to decrease payroll expenses and increase store profitability, thereby increasing Grooms' bonus paid under the MIP. As proof of his theory, Plaintiff cites to a slide deck entitled "Financial Management at The Home Depot" that discusses the importance of payroll with regards to store profitability. [Doc. No. 93-1 at p. 94, pp. 277-89]. However, evidence that payroll is important to store profitability is not evidence that Home Depot or its employees oppressively, fraudulently or maliciously terminated Plaintiff to save money. Nor does Plaintiff provide the Court with evidence that Home Depot authorized or ratified any alleged wrongful conduct or had the advance knowledge and conscious disregard required under section 3294(b). Plaintiff's conclusory accusations fall short of the clear and convincing evidence of oppression, fraud or malice required to recover punitive damages under California law. *See Shade Foods, Inc. v. Innovative Prods. Sales & Mktg., Inc.*, 93 Cal. Rptr. 2d 364, 394 (2000) (describing the "clear and convincing" standard as "requiring that the evidence be so clear as to leave no substantial doubt; sufficiently strong to command the unhesitating assent of every reasonable mind" (internal quotations omitted)).

The Court concludes that there are no genuine issues of material fact as to Plaintiff's request for punitive damages. Defendant has demonstrated that neither Collins nor Grooms was an officer, director, or managing agent of Home Depot, and Plaintiff failed to set forth facts showing that a genuine issue of disputed fact remains as to their corporate leadership status. *See Celotex Corp.*, 477 U.S. at 324. Plaintiff also failed to identify any other corporate leader at Home Depot that exhibited the "advance knowledge and conscious

disregard, authorization, ratification, or act of oppression, fraud, or malice" required to sustain punitive damages under section 3294(b). Accordingly, the Court finds that Defendant is entitled to summary judgment on Plaintiff's request for punitive damages.

## IV. CONCLUSION

For the reasons set forth above, Defendant's renewed motion for summary judgment as to punitive damages [Doc. No. 91] is **GRANTED**.

It is **SO ORDERED**.

Dated: November 23, 2020

_____
Hon. Cathy Ann Bencivengo
United States District Judge